IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

THE CONTRIBUTOR, et al.    )
                            )
v.                          ) NO. 3-11-0624
                            ) JUDGE CAMPBELL
CITY OF BRENTWOOD           )

MEMORANDUM

Pending before the Court are Plaintiffs' Motion for Summary Judgment (Docket No. 46) and Defendant's Motion to Dismiss for Failure to State a Claim or, Alternatively, Motion for Summary Judgment (Docket No. 50). For the reasons stated herein, Plaintiffs' Motion for Summary Judgment (Docket No. 46) is DENIED, and Defendant's Motion for Summary Judgment (Docket No. 50) is GRANTED. Defendant's Motion to Dismiss is denied as moot.

FACTS

The Contributor is a non-profit, tax-exempt corporation which produces a street newspaper to educate citizens about homelessness and poverty and to give job skills, meaningful work and a micro-business to persons who have experienced homelessness. The Contributor is sold by street vendors at various locations in Nashville and surrounding communities. Plaintiffs Hart and Harrington are vendors of The Contributor who were issued citations by Defendant for violation of Brentwood's former Ordinance 58-1.

The former Ordinance 58-1 provided that no one could use or occupy any portion of the city street, alley, sidewalk or the public right-of-way to sell any goods or materials. Following the citations of Hart and Harrington, the City of Brentwood revised Ordinance 58-1, because of concerns about its unconstitutionality. The revised Ordinance 58-1 provides:

(a) Except as permitted by other portions of this Code, no person shall use or occupy any portion of the public right-of-way, including any public street, median, alley or sidewalk for the purpose of:

> (1) Storing or exhibiting any goods, merchandise or other materials.

> (2) Selling or attempting to sell any goods, merchandise or other materials or any services.

**(b) No person shall stand on or otherwise occupy any portion of the public right-of-way, including any public street, median, alley or sidewalk for the purpose of soliciting or accepting a donation of money or any other item from the occupant of any vehicle.**

(c) No person shall, by means of a sign or other device of any kind, use or occupy any portion of the public right-of-way, including any public street, median, alley or sidewalk, to attempt to alert the driver or any occupant of a motor vehicle that is on a street to any commercial activity.

(d) Nothing in this section shall be construed to apply to:

> (1) Licensees, lessees, franchisees, permittees, employees or contractors of the city, county or state authorized to engage in inspection, construction, repair or maintenance or in making traffic or engineering surveys.

> (2) Any of the following persons while engaged in the performance of their respective occupations: firefighting and rescue personnel, law enforcement personnel, emergency medical services personnel, health care workers or providers, military personnel, civil preparedness personnel, emergency management personnel, solid waste or recycling personnel, public works personnel or public utilities personnel.

**(e) Nothing in this section or in any other part of this Code shall be construed as prohibiting the sale or distribution of newspapers, magazines, periodicals, handbills, flyers or similar materials, except that:**

> **(1) Such activity shall be prohibited on any portion of any street within the City.**

> **(2) Such material shall not be handed to the occupant of any motor vehicle that is on a street, nor shall any action be taken which is intended or reasonably calculated to cause the vehicle occupant to hand anything to the person selling or distributing the materials.**

Brentwood Ordinance 58-1 (emphasis added).

The fundamental issue presented in this case is whether Sections (b) and (e) violate the First Amendment as applied to The Contributor. The parties agree that this case raises issues of first impression regarding the constitutionality of Brentwood banning the sale of The Contributor from sidewalks to occupants of vehicles on the roadway.

It is undisputed that if Plaintiffs were to engage in the sale of The Contributor newspapers to drivers and/or occupants of vehicles traveling or stopped on roadways within the city limits of Brentwood from the sidewalk, without entering the street, they would be in violation of this Ordinance. Plaintiffs do not challenge the legitimacy of the Ordinance to the extent that it seeks prohibition against vending while standing in the street. Plaintiffs' counsel represented that this dispute is not about being in the street or running in and out of traffic. *See also* Plaintiffs' Responses to Defendant's Statement of Undisputed Material Facts (Docket No. 62), ¶¶ 285 and 471.

Plaintiffs allege that this Ordinance, as it prohibits the sale of The Contributor from the public right-of-way or sidewalk to drivers of occupants of vehicles on the public streets, violates Plaintiffs' First Amendment rights to freedom of speech, expression and the press. Plaintiffs contend that the Ordinance is a content-based restriction on protected speech that is not necessary to serve a compelling governmental interest. Moreover, Plaintiffs argue that the Ordinance is not narrowly tailored to serve a significant governmental interest and does not leave ample alternative channels for communication of The Contributor's message.

Defendant asserts that the Ordinance is a content-neutral time, place and manner restriction based upon the significant governmental interests of traffic safety and flow, narrowly tailored and allowing ample alternative means of communicating The Contributor's message.

SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

DISCUSSION

Plaintiffs claim that the First Amendment issues herein are "hybrid" in that they are claiming rights to the protected speech of the newspaper and also the protected speech related to soliciting for charitable contributions, which they have referred to as "pan-handling." The solicitation of money

4

and the distribution of literature are two different categories of speech, each of which enjoys protection under the First Amendment. *Ater v. Armstrong*, 961 F.2d 1224, 1228 (6th Cir. 1992).

In analyzing First Amendment claims to free speech, the Court must first determine whether the speech is protected. *Saieg v. City of Dearborn*, 641 F.3d 727, 734 (6th Cir. 2011). Defendant does not dispute that vendors of The Contributor exercise First Amendment rights in selling The Contributor newspaper. The Court finds that The Contributor is not only protected speech but also an important voice against homelessness in the Nashville area. The Court also finds that any solicitation of charitable contributions that occurs in conjunction with the vending of The Contributor is protected speech.

Secondly, in analyzing Plaintiffs' claims, the Court must identify the nature of the forum. *Id*. Defendant acknowledges that the sidewalks and streets of the City of Brentwood are traditional public fora.

Third, the Court must determine whether the justifications for the restriction satisfy the requisite standard. *Id*. In making that determination, the Court must consider whether the restriction on the protected speech is content-based or content-neutral. Whether the restriction is content neutral has substantial bearing on the constitutionality of the restriction because the government is held to a very exacting and rarely satisfied standard when it disfavors the discussion of particular subjects or particular viewpoints within a given subject matter. *Id*.

Government regulations of speech are content neutral if they are justified without reference to the content or viewpoint of the regulated speech. *Bays v. City of Fairborn*, 668 F.3d 814, 821 (6th Cir. 2012). A government restriction is content-based if it was adopted because of disagreement with the message the speech conveys. *Id*.

Defendant agrees that the subject Ordinance was drafted and enacted in response to and immediately following the citations of Plaintiffs Hart and Harrington under the old Ordinance. Defendant asserts, however, that the old Ordinance was reviewed and a revised Ordinance written in response to constitutional issues being raised by Plaintiffs in the appeals of their citations. *See e.g.,* Docket No. 53-4, p.23. Plaintiffs have admitted that the revision of the Ordinance was not intended to restrict The Contributor's rights. Docket No. 62, ¶ 28. City Attorney Roger Horner stated that he attempted to balance the rights of The Contributor and its vendors with the City's interests in public safety and traffic flow and traffic safety issues. *Id.*, ¶ 30.

Passage of the Ordinance was based, at least in part, upon an opinion letter from a transportation engineer, Bob Murphy (Docket Nos. 53-11), a memo and analysis from Horner (Docket No. 53-4) and the personal traffic safety experiences of the members of the Board of Commissioners. *See, e.g.,* Docket No. 62, ¶¶ 624, 640, 643, and 679. Murphy opined that there are safety and traffic flow problems associated with vendors who are on the sidewalk and making sales to motorists. Docket No. 62, ¶ 571-72; Docket No. 53-11, pp. 1-2.

The "Whereas" section of the Ordinance reflects that it was enacted, in part, because "solicitors create a safety hazard for themselves and the motoring public when entering upon public street, distributing items to vehicle occupants, or receiving money or other items from vehicle occupants" and "distraction of motorists occasioned by solicitations . . . impedes the safe and orderly flow of traffic, causes vehicles to stop unexpectedly, causes vehicles to linger at traffic control devices, and causes motorists to fail to attend to driving." Docket No. 53-4, p. 19. Horner's Memo to the Brentwood City Commission describes the purpose of the Ordinance as "to prevent accidents and other safety hazards to motorists and pedestrians and to avoid interference with the safe and efficient flow of traffic on busy streets." Docket No. 53-4, pp. 17-18.

The Court finds that the restriction at issue here is content-neutral and was enacted with a sufficient factual basis before the Commission. It was not adopted because of disagreement with the message of The Contributor; it was adopted in response to valid concerns about the unconstitutionality of the old Ordinance. It was adopted for legitimate reasons (public safety, traffic safety and traffic flow), separate from the content or viewpoint of The Contributor. It applies evenhandedly to *any* person who wishes to distribute newspapers, magazines, periodicals, handbills, flyers or similar materials or to solicit charitable contributions from drivers or occupants of vehicles on a public street in Brentwood.

The government may impose reasonable time, place and manner, content-neutral restrictions on protected speech so long as the restriction is narrowly tailored to serve a significant governmental interest and leaves open ample alternative channels for communication of the information. *Ater,* 961 F.2d at 1227; *Bays*, 668 F.3d at 822. A restriction on speech can satisfy the time, place and manner test if the restriction promotes a substantial government interest that would be achieved less effectively absent the regulation. *Saieg*, 641 F.3d at 738.

In other words, the government may employ the means of its choosing so long as the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation and the restriction is narrowly tailored so as not to burden substantially more speech than is necessary to further that interest. *Turner Broadcasting Sys., Inc. v. Federal Communications Comm'n.*, 520 U.S. 180, 213 (1997); *Saieg*, 641 F.3d at 738. Plaintiffs do not dispute that traffic safety and flow are significant governmental interests. Plaintiffs argue that the City of Brentwood did not appropriately balance the governmental interest with the burden upon Plaintiffs' speech.

In this case, achievement of the goals of traffic safety and flow would be significantly less effective without this regulation. The Court finds that Brentwood appropriately balanced its interest with the burden upon Plaintiffs' speech and narrowly tailored its Ordinance so as not to burden substantially more speech than necessary. This is not to say that Brentwood, or any city, *must* enact such a restriction. The Court only finds that Brentwood may do so without violating the Constitution, based on the facts in this case.

The cases cited by Plaintiffs are not to the contrary. For example, the statute struck down in *News and Sun-Sentinel Co. v. Cox*, 702 F.Supp. 891 (S.D. Fla. 1988) banned all commercial activity (including newspaper sales) to occupants of all motor vehicles located anywhere on public property, regardless of whether the cars were moving, standing, parked or not in traffic lanes. The ban included sidewalks, rest areas and other traffic-neutral locations. *Id*. at 901; *see also Houston Chronicle Pub. Co. v. City of Houston*, 620 S.W.2d 833 (Tex. Civ. App. 1981) (ban on sales to vehicles on all public property, not just roadways). In *Dominguez v. State*, 902 S.W.2d 5 (Tex. App. - El Paso 1995), the ordinance at issue banned solicitation, sales or distribution from the roadway itself, but not from the sidewalk, to vehicle occupants. The *Dominguez* court acknowledged, however, the dangers of distracting a motorist from the primary business of driving and the safety and traffic flow issues of searching for money and receiving change. *Id.* at 8. Such dangers are not remedied by requiring the vendor to stand on the sidewalk and reach into traffic to make his sales.

If vendors were allowed to sell papers from the sidewalks to drivers or passengers in the roadway, the safety issues and traffic flow problems would not be as effectively resolved. The sales transaction itself - money and newspapers changing hands, making change - diverts the driver's attention from the roadway and disrupts the flow of traffic. *See Denver Pub. Co. v. City of Aurora*, 896 P. 2d 306, 315 (Col. 1995). In addition, Plaintiffs have stated that part of their protected speech

is the interaction between the homeless and formerly homeless and those buying the papers. This indicates that the encounters with motorists involve conversations which go beyond the sales transactions and can further delay traffic. Plaintiffs do not dispute that obstructing traffic can cause a safety risk for drivers. Docket No. 62, ¶¶ 315 and 500. Other cases cited by Plaintiffs do not involve ordinances prohibiting the vending of newspapers from sidewalks to motorists in the street. *Sun-Sentinel Co. v. City of Hollywood*, 274 F.Supp.2d 1323 (S.D. Fla. 2003); *Houston Chronicle Pub. Co. v. City of League City*, 488 F.3d 613 (5th Cir. 2007); *Times-News Pub. Co. v. City of Burlington*, 2008 WL 2622995 (M.D. N.C. 2008).

The restriction must also leave open ample alternative channels of communication. *Saieg*, 641 F.3d at 735. When a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the government's goal. *Id*. at 739.

Plaintiffs choose to sell their newspapers to persons in vehicles traveling in the roadway. There is no evidence before the Court that Plaintiffs are actually precluded from other means of selling: door-to-door, through subscriptions, on private property with permission, to pedestrians on sidewalks or in appropriately-placed news racks. The fact that Plaintiffs typically have not used these other means has nothing to do with the City of Brentwood. Plaintiffs have made the choice as to the medium of their message, but they can select other available means as well.

As the court stated in *Dominguez*, just because the ordinance precludes Plaintiffs from selling in the way they find most efficacious does not mean they are left without any means of selling papers at all. *Dominguez*, 902 S.W.2d at 8-9. The Court finds that the Ordinance leaves open ample alternative channels of communication for the Plaintiffs.

For instance, Plaintiffs admit that door-to-door sales of The Contributor would be possible (Docket No. 62, ¶ 299), that The Contributor considered distribution through newspaper boxes and elected not to pursue that method (*Id.*, ¶¶ 301 and 454), that The Contributor makes the newspaper available through subscriptions and by mail on a limited basis (*Id.*, ¶¶ 370 and 453), and that The Contributor makes some copies available at speaking engagements (*Id.*, ¶ 371).

Thus, for these reasons, the Court finds that the Brentwood Ordinance at issue, as applied to the Plaintiffs, is constitutional. Accordingly, Defendant's Motion for Summary Judgment is granted, and Plaintiffs' Motion for Summary Judgment is denied.

The parties have raised other issues regarding the scope and constitutionality of the Ordinance but have not fully briefed those issues. Therefore, by November 14, 2012, the parties shall identify any remaining claims, and the Court will establish a further briefing schedule if necessary.

## CONCLUSION

For all these reasons, Plaintiffs' Motion for Summary Judgment (Docket No. 46) is DENIED, and Defendant's Motion for Summary Judgment (Docket No. 50) is GRANTED. Plaintiffs' First Amendment claims regarding subsections (b) and (e) of Ordinance 58-1 are dismissed.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE